**Cassandra JOHNSON and Jarrett Wayne Buse, Appellants– Plaintiffs,**

v.

**Anya Elizabeth WAIT as Personal Representative of the Estate of Erik Jon Wait, M.D., Deceased, St. Mary's Medical Center Welborn, and James R. Miller, M.D., Appellees–Defendants.**

No. 82A01–0910–CV–498.

Court of Appeals of Indiana.

April 12, 2011.

Rehearing Denied June 23, 2011.

Rocco A. Marrese, Evansville, IN, Attorney for Appellants.

John Christopher Wall, William W. Drummy, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, LLP, Terre Haute, IN, Attorneys for Appellee Miller.

Patrick A. Shoulders, Steven K. Hahn, Ziemer, Stayman, Weitzel & Shoulders, LLP, Evansville, IN, Attorneys for Appellee St. Mary's Medical Center Welborn.

Clay A. Edwards, Joshua W. Davis, O'Bryan, Brown & Toner, PLLC, Louisville, KY, Attorneys for Appellee Estate.

## OPINION

KIRSCH, Judge.

Cassandra Johnson ("Johnson") and her husband, Jarrett Wayne Buse ("Buse"), appeal from a negative judgment after a jury trial in their medical malpractice action against Erik Jon Wait, M.D. ("Wait"), James R. Miller, M.D. ("Miller"), and St. Mary's Medical Center Welborn ("SMMC") arising from an undiagnosed bilateral shoulder dislocation and shoulder fracture suffered by Johnson during her hospital stay due to the birth of her child. Johnson raises the following restated issues for our review:

I. Whether the trial court erred by giving, over objection, an instruction on contributory negligence that was not supported by the evidence;

II. Whether the trial court erred by refusing to give an instruction on *res ipsa loquitur*; and

III. Whether the trial court erred by allowing a defense expert to give certain opinions relating to causation.

We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

On May 1, 2000, Johnson was admitted to SMMC under the care of Wait for the cesarean birth of Johnson's fourth child. The delivery of Johnson's child that day was successful and without complications. Johnson received pain medication and medication for nausea following her surgery.[2] On the evening of May 2, 2000, Johnson began complaining of bilateral shoulder pain which persisted throughout the remainder of her admission and discharge from SMMC on May 7, 2000. A nurse noted that Johnson appeared to be anxious and panicky. In regard to Johnson's shoulder pain symptoms, Wait first sought a consultation from an orthopedic surgeon, who declined to see Johnson. Wait then sought a consultation from Miller, a neurologist.

Miller first attempted to examine Johnson on May 4, 2000. The nurses present informed him that Johnson's family was "crazy," and they described Johnson as a "real crazy patient" who needed a lot of medication. *Id.* at 1241. When Miller entered Johnson's hospital room, he observed Johnson lying in bed with a towel over her head. After receiving Johnson's "okay" to begin his examination of her, Miller placed his hand behind Johnson's

---

1. The events that gave rise to the plaintiffs' malpractice claim occurred over a period of six days in 2000. The legal resolution of their claim has taken more than ten years, six of those years passing before a decision was issued by the Medical Review Board, and another year passing before the filing of the amended complaint for damages. Such a delay shocks the conscience. William Gladstone's famous observation in 1868 remains true today: "Justice delayed is justice denied." *See also* Indiana Constitution, Article I, Section 12: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

2. At trial there was testimony suggesting that Johnson had received far more narcotic pain killer than she should have received. For example, documentation showed that Johnson, who is 4'11" and weighed 122 pounds following the delivery of her baby, received 1,667 milligrams of Demerol in 26 hours. *Tr.* at 487, 2168. An expert testifying on behalf of Johnson stated that a person of Johnson's size and weight should receive 385 milligrams of Demerol as a maximum dose per day. *Id.* at 486–87.

neck. *Id.* at 1180–81, 1242–43. Johnson then bounced her pelvic area up and down on the bed while screaming, "Don't touch me!" *Id.* at 1192–93; 1244. Johnson's mother-in-law, who was in the room at the time, interposed herself, and Miller's examination of Johnson ended.

Miller's impression of Johnson based upon that visit was "[c]onversion reaction and hysterical depersonalization. I will scan her neck with an MRI to make sure that there is no cervical cord problem." *Id.* at 1188. Miller never completed a physical examination of Johnson while she was at SMMC prior to her May 7, 2000 discharge from SMMC, although he made a total of four attempts to do so: the initial attempt, while in transit for her MRI, shortly after the MRI was complete, and when she was seen playing with and feeding her baby. Miller's diagnosis of conversion reaction[3] signaled to physicians and nurses that Johnson did not have a physical ailment, but rather a psychiatric problem. *Id.* at 1271. The cervical MRI result was abnormal showing disk protrusions. Miller left orders for physical therapy, among other things. Miller saw Johnson on May 5, 2000 and recorded a progress note observing that Johnson seemed "much better, calmly playing with baby and holding it [sic] in her arms." *Id.* at 2493; *SMMC Ex. B* at 39.

Based upon Miller's diagnosis of a conversion disorder, Wait requested a psychiatric consult, which was performed by Dr. David Hilton ("Hilton"). A day prior to the psychiatric examination, a social worker performed an initial interview with Johnson. The social worker noted inconsistencies between Johnson's complaints about shoulder pain and inability to move her arms, and her observed activities, i.e., her ability to move her arms without problem. Hilton examined Johnson and made the following notations in his record: "Neuro ruled out [a] medical cause." *Id.* at 1869–70; 1903–04. Based upon Miller's diagnosis and the social worker's notes detailing Johnson's history of extreme sexual and physical abuse as a child, Hilton diagnosed Johnson with a likely personality disorder.

Wait reviewed Hilton's psychiatric consultation report, and Johnson was discharged on May 7, 2000 without a complete physical examination, but with Wait and Hilton understanding that Miller had ruled out a physiological cause of Johnson's complaints regarding shoulder pain.

Johnson made two visits to the emergency room complaining first of swelling and pain in her left arm, and then later, of pain in her spine radiating down to the shoulders on each side. Two days after her second visit to the emergency room, on May 18, 2000, Johnson went to see her family physician and an orthopedic surgeon. The orthopedic surgeon by shoulder x-ray found that Johnson had bilateral shoulder dislocations and an avulsion fracture. On May 19, 2000, Johnson's shoulder dislocations were reduced under general anesthesia.

Johnson and Buse filed a proposed complaint against Wait, Miller, and SMMC, and the members of the Medical Review Panel found, on May 3, 2006, that only Wait had failed to meet the applicable standard of care as charged in the pro-

---

3. "Conversion reaction" is defined as "[a] psychological disorder characterized by physical symptoms for which no physiological cause can be found....Conversion reaction is a very rare condition, accounting for about 2 percent of all psychiatric diagnoses, and usu-ally appears during adolescence or early adulthood, generally when an individual is under severe stress ...." *http://www. encyclopedia.com/doc/1G2–3406000156.html* (last visited on March 3, 2011).

posed complaint. Johnson and Buse filed their amended complaint for damages on May 22, 2007. The jury trial commenced on June 29, 2009, nearly nine years after the birth of Johnson's fourth child. At the end of Johnson and Buse's case-in-chief, the trial court determined that based on the evidence presented, that the events surrounding Johnson's May 1, 2000, admission to the hospital were the only events at issue. The trial court also granted, in part, SMMC's motion for directed verdict in favor of only the physical therapist defendants. The trial ended on July 9, 2009, with a total defense verdict. The trial court entered judgment on the verdict on July 13, 2009. Johnson and Buse filed a motion for judgment on the evidence and/or motion to correct error on August 10, 2009, which the trial court denied on September 14, 2009. Johnson and Buse now appeal. Additional facts will be supplied.

## DISCUSSION AND DECISION

■ Before addressing the issues in this case, we note that the procedure that the trial court followed in hearing the objections to the court's jury instructions was not in accordance with Indiana Trial 51(C). Here, trial court heard the objections after instructing the jury and the jury had already retired to deliberate. The parties agreed to the procedure and that no party waived any rights by not objecting prior to final argument and instructions.

Indiana Trial Rule 51(C) provides in pertinent part that

[n]o party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. The court shall note all in-structions given, refused or tendered, and all written objections submitted thereto, shall be filed in open court and become a part of the record.

As we have previously stated,

The purpose of T[.]R. 51(C) is to guarantee counsel the opportunity to make objections which will afford the trial court the opportunity to correct any instruction before giving it to the jury if it is erroneous. Absent proper objections to instructions, once those instructions are read to the jury, they become the law of the case.

*Nelson v. Metcalf*, 435 N.E.2d 39, 41 (Ind. Ct.App.1982). Because of the parties' acquiescence, we find no reversible error in the procedure followed by the trial court, but we caution against it and reiterate our position that recording of objections to final instructions after the jury has been instructed and has retired to deliberate, is not the preferred procedure. *See e.g., Manning v. Allgood,* 412 N.E.2d 811, 814 (Ind.Ct.App.1980) (not preferred procedure, but no reversible error where party acquiesced in procedure and no rights were lost or compromised); *Piwowar v. Washington Lumber & Coal Co.,* 405 N.E.2d 576, 582 (Ind.Ct.App.1980) (although not preferred procedure, no reversible error), *abrogated on other grounds by Osmulski v. Becze,* 638 N.E.2d 828 (Ind.Ct. App.1994).

## I. Contributory Negligence Instruction

■ "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Joyner–Wentland v. Waggoner,* 890 N.E.2d 730, 733 (Ind.Ct.App.2008) (quoting *Estate of Dyer v. Doyle,* 870 N.E.2d 573, 581 (Ind.Ct.App.2007)). We review a trial court's decision to give or refuse a ten-

dered instruction for an abuse of discretion. *Id.* Upon review of a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by evidence in the record, and (3) is covered in substance by other instructions. *Id.* at 734.

In the present case, the trial court gave an instruction on contributory negligence. Miller had tendered an instruction on the subject. We pause to note that,

> [t]he Indiana Comparative Fault Act replaced the defense of contributory negligence, which completely bars a plaintiff from any recovery, with a system providing for the reduction of a plaintiff's recovery in proportion to the plaintiff's fault. The Act, however, does not apply to cases alleging medical malpractice and, instead, preserved contributory negligence as a medical malpractice defense. A plaintiff is contributorily negligent when her conduct falls below the standard to which she should conform for her own protection and safety. Contributory negligence is the failure of a person to exercise for her own safety that degree of care and caution an ordinary, reasonable, and prudent person in a similar situation would exercise. Contributory negligence must be the proximate cause of the plaintiff's injury in order to constitute a complete bar to recovery. The contributory negligence must unite in producing the injury and be simultaneous with the fault of the defendant.

*Id.* (internal citations omitted).

The trial court gave the following instruction, Instruction Number 15, regarding contributory negligence:

> It is the duty of the patient to use such care as a person of ordinary prudence would ordinarily use in circumstances like her own, and if the patient fails to do this, and the failure is a proximate cause of the injuries for which she seeks to recover, she cannot hold the physician answerable for the consequences of her own lack of ordinary care.

*Appellants' App.* at 64. Johnson and Buse argued at trial that there was insufficient evidence in the record to support the giving of the instruction. More specifically, the record reveals that Johnson and Buse claimed "[w]ith regard to instruction number 15 ... There is no evidence, no reasonable evidence, to support the contention that the plaintiff, Cassandra Johnson in any way contributed or caused to her injury." *Id.* at 2289–90. Now on appeal, however, in addition to the argument that there was insufficient evidence to support giving the instruction, Johnson and Buse argue that the instruction is an incorrect statement of the law.

We agree that the instruction, as given, was an incorrect statement of the law because it is incomplete. The instruction given by the trial court did not inform the jury that the defendants had the burden of proving all of the elements of contributory negligence. *See Hi–Speed Auto Wash, Inc. v. Simeri,* 169 Ind.App. 116, 346 N.E.2d 607, 608 (1976) ("[p]roving contributory negligence rests with the defendant."). However, Johnson and Buse did not make that argument below, and the alleged error is waived. "As a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court." *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC.,* 764 N.E.2d 647, 651 (Ind.Ct.App.2002).

Johnson and Buse attempt to avoid waiver of their argument by claiming that the trial court committed fundamental error by giving the faulty instruction.

When a court on appeal finds the error to be fundamental, such error need not be preserved by a contemporaneous objection. *David v. State,* 669 N.E.2d 390, 392 (Ind. 1996). A fundamental error is "a substantial, blatant violation of basic principles of due process rendering the trial unfair to the defendant." *Taylor v. State,* 717 N.E.2d 90, 93 (Ind.1999). "The error must be 'so prejudicial to the rights of a defendant as to make a fair trial impossible.' " *Carter v. State,* 754 N.E.2d 877, 881 (Ind. 2001) (quoting *Barany v. State,* 658 N.E.2d 60, 64 (Ind.1995)). "An appellate court receiving contentions of fundamental error need only expound upon those it thinks warrant relief." *Id.* at 881. "The fundamental error doctrine is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Lehman v. State,* 926 N.E.2d 35, 38 (Ind. Ct.App.2010).

We have applied the fundamental error doctrine only in limited situations in civil cases. *See S.M. v. Elkhart Cnty. Office of Family & Children,* 706 N.E.2d 596, 599 n. 3 (Ind.Ct.App.1999) (citing a commitment case and a termination case where the doctrine had been applied and a securities violation case in which it was not). Here, the appellants have failed to show that the fundamental error doctrine should be extended to cases that do not involve liberty interests or parental rights.

 Consequently, the only component of Johnson and Buse's argument regarding their challenge of the contributory negligence instruction that is properly before us on appeal is their claim that there was insufficient evidence to warrant the giving of the instruction. Johnson and Buse's amended complaint alleged the following:

8. [SMMC's] Welborn Campus, by its agents and employees, [Wait], and [Miller], were negligent in providing follow-up care and services, including but not limited to failure to timely diagnose and properly treat [Johnson's] condition.

9. As a direct and proximate result of the negligence of the defendants, and each of them, Cassandra Johnson suffered prolonged bilateral shoulder dislocations, a broken arm, permanent injury and impairment, emotional distress, physical pain and suffering, and additional hospital, medical, and other treatment and expenses, all of which is continuing.

*Appellants' App.* at 400. There was evidence in the record from which the jury could have concluded that Johnson's refusal to allow Miller to examine her constituted contributory negligence regarding this claim. Therefore, we find that there was sufficient evidence to support the giving of an instruction on contributory negligence.

### II. *Res Ipsa Loquitur* Instruction

 Johnson and Buse argue that the trial court erred by failing to instruct the jury on the doctrine of *res ipsa loquitur.* "The doctrine of *res ipsa loquitur* is a qualified exception to the general rule that the mere fact of injury will not create an inference of negligence." *Syfu v. Quinn,* 826 N.E.2d 699, 703 (Ind.Ct.App. 2005). *Res ipsa loquitur,* or "the thing speaks for itself," is a rule of evidence that permits an inference of negligence to be drawn based upon the surrounding facts and circumstances of the injury. *Rector v. Oliver,* 809 N.E.2d 887, 889 (Ind.Ct.App. 2004). "Whether the doctrine applies in any given negligence case is a mixed question of law and fact." *Syfu,* 826 N.E.2d at 703. The question of law is whether the plaintiff's evidence included all of the elements of *res ipsa loquitur.* The underlying elements follow:

To establish the doctrine of *res ipsa loquitur*, one must show: (1) the injury is one which ordinarily does not occur in the absence of negligence; (2) the injury was caused by an agency within the defendant's exclusive control; and (3) the injury was not due to any voluntary act on the plaintiff's part.

*Widmeyer v. Faulk*, 612 N.E.2d 1119, 1124 (Ind.Ct.App.1993).

Johnson and Buse tendered the following instruction, which was rejected by the trial court.

If the plaintiff has proved by a preponderance of the evidence each of the following:

(1) The patient and the patient's actions or reactions were under the health care provider(s)'s care and exclusive control;

(2) The injury was of a nature that would not have occurred but for an act of malpractice; and

(3) The agency or instrumentality that caused the injury was within the health care provider(s)'s exclusive control.

then you may infer that an act of malpractice may have occurred, but you must weigh such inference with all of the other evidence.

*Appellants' App.* at 80.

As previously stated, upon review of a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by evidence in the record, and (3) is covered in substance by other instructions. *Joyner–Wentland*, 890 N.E.2d at 734. However, we must first address SMMC and Miller's argument that no error may be predicated on the trial court's decision to refuse to give this in-struction as it exceeded the limit on tendered instructions contained in Indiana Trial Rule 51(D).

■ T.R. 51(D)[4] provided as follows:

**(D) Limit upon requested instructions.** Each party shall be entitled to tender no more than ten [10] requested instructions to be given to the jury; however, the court in its discretion for good cause shown may fix a greater number. Each tendered instruction shall be confined to one [1] relevant legal principle. No party shall be entitled to predicate error upon the refusal of the trial court to give any tendered instruction in excess of the number fixed by this rule or the number fixed by the court order, whichever is greater.

Miller and SMMC contend that Johnson and Buse tendered thirty-seven proposed instructions and that the tendered instruction on *res ipsa loquitur* was tendered instruction number 21; therefore, pursuant to the trial rules, Johnson and Buse cannot now argue that the trial court erred by refusing to give their tendered instruction.

We have said the following regarding the limitation on instructions:

Indiana Rules of Procedure, Trial Rule 51(D) allows each party to tender ten jury instructions. However, the court "in its discretion for good cause shown" may allow more.... The purpose of the limit is to promote accurate and general instructions on the applicable law and to increase jury comprehension and retention. Under the trial rule, it is in the court's discretion to accept more than ten instructions tendered. The rule does not specifically require notice to the other side of intent to ask for addi-

---

4. Although the wording of this section of the trial rule has been changed subsequent to the trial at issue, the limitation on the number of tendered instructions, ten, remains the same.

tional instructions but only requires the court's discretion be guided by a showing of good cause.... However, we note that had the court accepted only ten instructions, it still could have given the other instructions as the court's own without a showing of cause.

*State v. Bouras,* 423 N.E.2d 741, 747 (Ind. Ct.App.1981). There is nothing in the record here to show that Johnson and Buse requested additional instructions or that there was good cause shown for giving the instruction. By operation of the rule alone, Johnson and Buse cannot now challenge the trial court's decision to refuse to give their tendered instruction.

▪ That said, we find that the trial court did not err by refusing to give the tendered instruction because there is a dearth of evidence as to exactly how and when Johnson's shoulder injuries occurred. Without that evidence, they could not establish that Johnson's injuries resulted from an instrumentality in the defendants' exclusive control, which is a requirement for application of the doctrine of *res ipsa loquitur.*

### III. Defense Expert Testimony

▪ Johnson and Buse claim that the trial court abused its discretion by allowing a defense orthopedic expert witness, Dr. Frank Bonnarens ("Bonnarens"), to testify as to his opinions on causation. On December 9, 2008, eight years after Johnson's injuries, the trial court held a scheduling conference and issued a scheduling order. Pursuant to that order, disclosure of defense expert witnesses was due on April 6, 2009. Discovery terminated on May 1, 2009. On April 27, 2009, Wait scheduled Johnson for an independent medical examination ("IME") with Bonnarens. On May 4, 2009, Johnson's counsel advised Wait's counsel that he was refusing to allow Johnson to be examined by

Bonnarens. On May 6, 2009, Wait filed his disclosure of expert witnesses, which included Bonnarens. Wait also filed a motion to compel Johnson to submit to an IME with Bonnarens. The trial court granted Wait's motion to compel and instructed the parties to complete the IME promptly so that Johnson's counsel could have the report and depose Bonnarens.

Bonnarens examined Johnson on June 8, 2009. On June 18, 2009, Wait filed a supplemental expert disclosure stating as follows about Bonnarens's trial testimony:

> [A]bout types of shoulder dislocations and fractures, as well as the conditions at issue in this case. It is expected that Dr. Bonnarens' trial testimony will rebut the disability, impairment rating, condition of Plaintiff, and causation opinions of Dr. Bryan Bloss expressed in Dr. Bloss' reports and deposition. It is also anticipated that Dr. Bonnarens will address Plaintiff Cassandra Johnson's condition and future prognosis, and future medical treatment, if any, in addition to areas previously described.

*Appellants' App.* at 178. This disclosure also contained Bonnarens's curriculum vitae, and a five-page report.

Johnson's counsel did not depose Bonnarens prior to trial although he was made available for deposition. As previously stated, the jury trial began on June 29, 2009, and on July 2, 2009, Johnson and Buse filed a supplemental motion in limine to preclude certain expert testimony of Bonnarens. A hearing was held on the motion during the course of which Johnson's counsel stated:

> [W]e have no objection to Dr. Bonnarens testifying from his report ... so ... if he confines his testimony to his report, then we ... would withdraw our motion.

*Id.* at 96. Counsel for Wait stated the following:

All I can say is he will testify as to what is in his report and disclosure.

*Id.* at 99.

The trial court denied Johnson's motion in limine, but prohibited Bonnarens from testifying about the standard of care. During Bonnarens's testimony at trial, Johnson's counsel objected to Bonnarens's testimony as to the cause of Johnson's shoulder injuries, objected on the basis that a question posed to Bonnarens was leading, and objected to other testimony for going beyond Bonnarens's report. The trial court overruled the objections and allowed Bonnarens to read from his report. Johnson claimed that the trial court abused its discretion by allowing this expert testimony on the issue of causation when Bonnarens had been disclosed as an expert witness after the discovery deadline.

The standard of review for admissibility of evidence issues is abuse of discretion. *Perry v. Gulf Stream Coach, Inc.*, 871 N.E.2d 1038, 1047 (Ind.Ct.App.2007). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* We will not reverse the trial court's admission of evidence absent a showing of prejudice. *Smith v. Johnston*, 854 N.E.2d 388, 389 (Ind.Ct.App.2006). A trial court is accorded broad discretion in ruling on issues of discovery, and a reviewing court will interfere only when a party can show an abuse of that discretion. *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 321 (Ind. Ct.App.2006).

■■■■ Indiana Trial Rule 26(E) requires parties to supplement discovery responses after the initial response. *P.T. Buntin, M.D., P.C. v. Becker*, 727 N.E.2d 734, 737 (Ind.Ct.App.2000). "The duty to supplement is absolute and is not predicated upon a court order." *Id.* at 738. If a party fails to conform to supplement discovery responses concerning experts to be used at trial, the trial court can exercise its discretion and exclude the testimony of the witness. *Id.*

In the present case, Wait filed a supplemental discovery response listing Bonnarens as an expert witness and disclosed Bonnarens's report to Johnson and Buse. Johnson and Buse had the opportunity to depose Bonnarens, but did not avail themselves of that opportunity. Further, Johnson and Buse did not claim that they had insufficient time to prepare for trial because of the addition of this witness. They have failed to show that the trial court erred by allowing this testimony, testimony to which they agreed at the hearing on their motion in limine. Granted, this case took nine years to get through the system, and likely resulted in prejudice to all of the parties due to the passage of this time. However, Johnson and Buse have failed to establish that they were prejudiced by the trial court's decision to allow Bonnarens to testify from the IME report generated after the discovery deadline had passed.

Affirmed.

CRONE, J., and BRADFORD, J., concur.