**GREEN RIVER MOTEL MANAGEMENT OF DALE, LLC, et al., Appellants–Defendants,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 74A05–1104–PL–169.**

Court of Appeals of Indiana.

Nov. 16, 2011.

Rehearing Denied Feb. 3, 2012.

Kevin R. Patmore, Patmore Law Office, Santa Claus, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant Green River Motel Management of Dale, LLC ("GRMM"), appeals from a judgment in its favor in the amount of $288,000 following Appellee–Plaintiff the State of Indiana's taking of 3.983 acres of GRMM's land. As restated and reordered, GRMM contends that the trial court erred in denying its summary judgment motion, the trial court abused its discretion in instructing the jury, and the trial court abused its discretion in admitting certain evidence. We affirm.

## FACTS AND PROCEDURAL HISTORY

In April of 1997, Bhaskar Desai, acting in his capacity as one of the members of GRMM, purchased 11.692 acres of land along U.S. Highway 231 near its intersection with Interstate 64 and the town of Dale. GRMM built a Motel 6 on the property, and the three-story, interior corridor facility was opened for business in 1999. In 2002, Desai learned that the State intended to close the existing I–64–U.S. 231 interchange and replace it with a new interchange between I–64 and a newly-built and realigned U.S. 231 approximately ¼ mile to the west. The relocation was completed in 2008.

As a result of the relocation, the Motel 6 is located on what is now called Old U.S. 231, and the means of access to it by road from I–64 have changed. Motorists exiting I–64 onto the new U.S. 231 who are attempting to reach the Motel 6 must drive south on U.S. 231, turn left onto one of at least two eastbound roads that connect with Old U.S. 231, and then turn left onto northbound Old U.S. 231. Access in this fashion via eastbound County Road 2050 North ("CR 2050") adds approximately 1.6 miles to the trip, while access via eastbound State Road 62 adds approximately 4.6 miles.

Additionally, construction of the new interchange required State appropriation of some of GRMM's land. On April 2, 2003, the State filed a complaint for appropriation of 3.983 acres of GRMM's parcel. On June 4, 2003, the trial court appointed three disinterested freeholders of Spencer County to assess the benefits and damages

of the taking. On July 23, 2003, the freeholders reported that GRMM was entitled to $283,550.00 from the State as a result of the appropriation. Both GRMM and the State filed exceptions to the freeholders' report. On December 2, 2003, appraiser Gregory Abell, working on behalf of the State, completed an appraisal of the appropriated property and valued it at $288,000.00.

On June 4, 2009, GRMM filed for summary judgment, asking the trial court to rule as a matter of law that the proper measure of damages to which it was entitled was the difference between value of the entire parcel before the taking and after. In the memorandum attached to the summary judgment motion, GRMM argued that the economic impact on its business resulting from moving the interchange amounted to a compensable taking under the United States and Indiana constitutions. On January 28, 2010, the trial court denied GRMM's summary judgment motion.

Prior to trial, the trial court permitted GRMM to present evidence outside the presence of the jury that Dale had an eight-ton weight limit on all of its roads; that in June of 2010 Dale had signed an agreement with the Indiana Department of Transportation ("INDOT") to take full responsibility for operation, construction, maintenance, regulation, and liability related to Old U.S. 231 and the portion of CR 2050 connecting it with new U.S. 231; and that Indiana's weight limit for U.S. highways was forty tons. GRMM, citing the above, claimed that, as of Dale's takeover of Old U.S. 231 from INDOT, semi-trailer trucks would no longer be able to access the Motel 6 because they would exceed the weight limits for that road. The trial court ruled that it would allow GRMM to present evidence related to any loss related to decreased truck traffic.

At trial, Abell testified on behalf of GRMM. Abell testified that due to the interchange relocation and the weight limit on Dale roads, GRMM's property could no longer be considered commercial property and that total damages to GRMM were $2,235,000.00. When State's appraiser William Bartlett II was asked by the State's counsel if the "change in access [to GRMM's property was] a compensable damage to the property[,]" he replied, "No sir, it's not." Tr. p. 143. Bartlett also testified that he was told by the Dale Town Attorney that an exception to the weight limit had been enacted for Old U.S. 231, so that GRMM's property remained accessible to large trucks. Bartlett also testified that the Town Attorney had told him that semi-trailer trucks were still being allowed to use CR 2050, even though that road was not mentioned in the ordinance containing the exception. Admitted at trial was a Dale Ordinance No.2011–2, enacted February 22, 2011, exempting Old U.S. 231, a/k/a Washington Street, from the town's eight-ton weight limit. Bartlett opined that the taking of the 3.983 acre parcel resulted in $120,000.00 of damages to GRMM. The jury returned a verdict fixing GRMM's damages at $288,000.00, which is consistent with Abell's 2003 estimate of the value of the 3.983 acres taken by the State. Both parties seem to be proceeding on the assumptions that the jury's award reflects compensation only for the 3.983 acres taken and that the jury accepted the State's argument that GRMM was entitled to no damages for loss of access to its property. We will proceed on the same assumption.

## DISCUSSION AND DECISION

### I. Whether the Trial Court Erred in Denying GRMM's Summary Judgment Motion

When reviewing the grant or denial of a summary judgment motion, we apply

the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct.App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56. All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

Article I, section 21 of the Indiana Constitution provides that "No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." The Fifth Amendment of the U.S. Constitution similarly provides that "nor shall private property be taken for public use, without just compensation." The Fifth Amendment's Takings Clause applies to the states via the Due Process Clause of the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980); *Chi., Burlington & Quincy R.R. v. City of Chicago*, 166 U.S. 226, 241, 17 S.Ct. 581, 41 L.Ed. 979 (1897). We have held that the state and federal takings clauses are textually indistinguishable and are to be analyzed identically. *Cheatham v. Pohle*, 789 N.E.2d 467, 472–73 (Ind.2003) (citing *B & M Coal Corp. v. United Mine Workers of Am.*, 501 N.E.2d 401, 406 (Ind. 1986)).

There is no question that an exercise of eminent domain . . . is a constitutional "taking." Other forms of governmental action, however, are "takings" only if they meet the prevailing federal standard, which is that government action effects a taking if it deprives an owner of all or substantially all economic or productive use of his or her property. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538–40, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).

*State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210–11 (Ind.2009).

GRMM contends that the alteration of access to its property caused by the relocation of the interchange resulted in losses such that a taking has occurred and that it designated undisputed evidence to that effect, entitling it to summary judgment. In essence, this is an inverse condemnation claim, although not designated as such. "Inverse condemnation is a process provided by statute that allows individuals to be compensated for the loss of property interests taken for public purposes without use of the eminent domain process." *Ctr. Townhouse Corp. v. City of Mishawaka*, 882 N.E.2d 762, 770 (Ind.Ct. App.2008) (citing Ind.Code § 32–24–1–16), *trans. denied.*

"It has long been recognized that the right of ingress and egress is a property right which cannot be taken without compensation." *Jenkins v. Bd. of Cnty. Comm'rs of Madison Cnty.*, 698 N.E.2d 1268, 1270 (Ind.Ct.App.1998), *trans. denied.* On the other hand, however, "although an elimination of rights of ingress and egress constitutes a compensable taking, the mere reduction in or redirection of traffic flow to a commercial property is not a compensable taking of a property right."

*Kimco,* 902 N.E.2d at 214. "The general rule is that there is no property right of an abutting property owner in the free flow of traffic past his property and thus no compensation can be claimed if traffic is diverted from his premises or made to travel a more circuitous route." *Id.* at 213 (quoting *State v. Ensley,* 240 Ind. 472, 489, 164 N.E.2d 342, 350 (1960)).

Here, GRMM designated no evidence in support of its summary judgment motion tending to show that any interference to ingress or egress occurred by virtue of State action. The means of ingress/egress is as it ever was—from the road that was formerly U.S. 231 and now is Old U.S. 231. At most, the designated evidence tends to show that motorists would have to travel a more circuitous route to reach GRMM's property, but as *Kimco* makes clear, this is insufficient to establish a taking. GRMM designated a great deal of evidence that its Motel 6 business has been significantly damaged by the relocation of the interchange, and we have no reason to doubt that this is true. Such damage is, however, not compensable if it is due solely to diverted traffic as a matter of law, and that is all that GRMM's designated evidence indicates.

GRMM draws our attention to Indiana Supreme Court cases *State v. Peterson,* 269 Ind. 340, 381 N.E.2d 83 (1978), and *State v. Geiger & Peters,* 245 Ind. 143, 196 N.E.2d 740 (1964), cases in which it was determined that compensable loss had occurred despite no exercise of eminent domain. Both cases, however, involved direct interference with ingress and egress rights of the property in question and are therefore distinguishable. In *Peterson,* the court concluded that a compensable taking had occurred when a road bordering Peterson's property was converted to a limited-access highway, thereby denying all ingress or egress on that border. *Pe-*

*terson,* 269 Ind. at 342, 381 N.E.2d at 84. Likewise, in *Geiger & Peters,* a commercial property's access to Madison Avenue in Indianapolis was completely eliminated when the road was widened and regraded at ten to fourteen feet below its former grade. *Geiger & Peters,* 245 Ind. at 146, 196 N.E.2d at 741. In summary, both *Peterson* and *Geiger & Peters* involved direct interference with ingress and egress rights, something we do not have here. Because a State action that merely alters the flow of traffic or causes access by a more circuitous route cannot give rise to a taking as a matter of law, the trial court correctly denied GRMM's summary judgment motion.

## II. Whether the Trial Court Abused its Discretion in Instructing the Jury

When we review a trial court's decision to give or refuse a tendered instruction, we consider whether: 1) the instruction correctly states the law; 2) the evidence in the record supports giving the instruction, and 3) the substance of the instruction is covered by other instructions. In determining whether sufficient evidence exists to support an instruction, we will look only to that evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. We review a trial court's decision to give or refuse to give an instruction for an abuse of discretion. *Simmons v. Erie Ins. Exch.,* 891 N.E.2d 1059, 1064 (Ind.Ct.App.2008) (citations, quotation marks, and footnote omitted). "Even when a jury is given an incorrect instruction on the law, we will not reverse the judgment unless the party seeking a new trial shows 'a reasonable probability that substantial rights of the complaining party have been adversely affected.'" *Penn Harris Madison Sch. Corp. v. How-*

*ard,* 861 N.E.2d 1190, 1195 (Ind.2007) (citation omitted).

 GRMM contends that the trial court abused its discretion in instructing the jury on loss of access as follows:

> You may award damages to a property owner of loss of access to the property, but only when that loss of access is special and unique to that property and not the inconvenience suffered by the general public. You may only award loss of access damages if the loss of access deprives the property owner of all or substantially all economic or productive use at its highest and best use. If, after the loss of access, the property was still suitable for a less valuable use, you may award damages that reflect the reduced value of the property.

Tr. p. 235.

We express no opinion on the propriety of this instruction, as any error the trial court may have committed in this regard can only be considered harmless. As we concluded, GRMM's inverse condemnation claim fails as a matter of law, which rendered the trial court's denial of its summary judgment motion proper.[1] Of course, another result of the claim's failure as a matter of law is that any verdict in GRMM's favor on this point would have been improper. Under the circumstances, any instructional error the trial court may have made in instructing the jury on inverse condemnation could only be considered harmless.

### III. Whether the Trial Court Abused its Discretion in Admitting Certain Evidence

Generally, the admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Zemco Mfg., Inc. v. Pecoraro,* 703 N.E.2d 1064, 1069 (Ind.Ct.App.1998), *trans. denied.* We will reverse a trial court's decision only for an abuse of discretion, that is, when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Id.* Further, any error in the admission of evidence is harmless if the same or similar evidence is submitted without objection. *Homehealth, Inc. v. N. Ind. Pub. Serv. Co.,* 600 N.E.2d 970, 974 (Ind.Ct.App.1992), *reh'g denied.*

*R.R. Donnelley & Sons Co. v. N. Tx. Steel Co., Inc.,* 752 N.E.2d 112, 126–27 (Ind.Ct. App.2001), *trans. denied.*

### A. Bartlett's Testimony Regarding Whether the Relocation of the Interchange Caused a Taking

 GRMM contends that the trial court abused its discretion in allowing Bartlett to state a legal conclusion, *i.e.,* that the change in access was not a compensable damage to GRMM. GRMM contends that this testimony amounted to testimony by an expert regarding a legal conclusion, which is generally not permitted. Indiana Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness

---

1. The claim's failure as a matter of law could have resulted in entry of summary judgment in favor of the State, relief it apparently did not request below and does not request now. *See Shah v. Harris,* 758 N.E.2d 953, 955 (Ind. Ct.App.2001) ("Additionally, when a party files a motion for summary judgment, that movant bears the risk of entry of summary judgment in favor of the non-movant, even though the non-movant has not filed a cross-motion for summary judgment."), *trans. denied.*

has testified truthfully; or legal conclusions." Any error in admitting the testimony in question, however, was harmless. As previously mentioned, GRMM's inverse condemnation claim fails as a matter of law. Consequently, to the extent that Bartlett drew a legal conclusion on the stand, it was one that the jury was legally compelled to reach in any event. GRMM was not prejudiced by any error the trial court may have committed in this regard.

## B. Bartlett's Testimony Regarding his Conversations with Dale Town Attorney

■■■ GRMM contends that the trial court abused its discretion in allowing Bartlett to testify regarding the substance of conversations he had with the Dale Town Attorney about weight limits, and enforcement thereof, on Old U.S. 231 and CR 2050, testimony which was admitted over GRMM's hearsay objection. Both parties agree that Bartlett testified as an expert on real estate appraisal for the State, and Indiana Evidence Rule 703 provides as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. Experts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field.

Bartlett testified that the Dale Town Attorney told him that Dale had enacted an exception to the eight-ton weight limit for Old U.S. 231 and that semi-trailer trucks were also being allowed to use CR 2050. This countered, to a certain extent, GRMM's previously-presented evidence

that traffic to the Motel 6 was potentially limited by an eight-ton Dale weight limit on Old U.S. 231 that lasted from June of 2010 until February of 2011.[2]

As with GRMM's other claim of evidentiary error, we need not determine whether the trial court abused its discretion in this regard, as any such error could only be considered harmless. Even if we were to assume that weight restrictions preventing heavy truck could constitute a taking, there is no evidence whatsoever that any heavy truck was ever prevented from accessing GRMM's property between June of 2010 and February of 2011 due to a weight restriction on Old U.S. 231, a weight restriction that is no longer in effect. It seems self-evident that proof of loss of access must be actual and not just speculative. Because GRMM failed to present any actual evidence of damage due to the weight restriction on Old U.S. 231, any error that might have occurred in admitting evidence to rebut the suggestion of damage could only be considered harmless.

The judgment of the trial court is affirmed.

ROBB, C.J., concurs.

BARNES, J., concurs with opinion.

BARNES, Judge, concurring with separate opinion.

I write to concur in full and to acknowledge the precedent our supreme court articulated in State v. Kimco of Evansville, Inc., 902 N.E.2d 206 (Ind.2009). As the author of the Court of Appeals decision reversed by that opinion, one does not have to be Carnac to realize I disagree.

2. GRMM did not designate any evidence regarding weight limits on Old U.S. 231 in its summary judgment motion.

However, our supreme court has spoken, and I concur.