Tracie L. BURTON, Appellant–Plaintiff,

v.

Donna BRIDWELL and State Farm Mutual Automobile Insurance Company, Appellees–Defendants.

No. 47A01–1003–CT–185.

Court of Appeals of Indiana.

Nov. 12, 2010.

David W. Stone, IV, Stone Law Office, Anderson, IN, Lee F. Baker, Nunn Law Office, Bloomington, IN, Attorneys for Appellant.

Rodney L. Scott, Tricia Kirkby Hofmann, Waters, Tyler, Hofmann & Scott, New Albany, IN, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff Tracie L. Burton (Tracie) appeals a jury verdict in her favor,

claiming that the jury's determination that she was 50% at fault in an auto accident while riding as a passenger in a vehicle that her husband was driving was contrary to law. Tracie also contends that the damage award was inadequate because she was not compensated for all of the medical expenses that she incurred as a result of the accident.

We conclude that the jury erroneously attributed 50% fault to Tracie. However, the error was harmless, as the jury's gross damage award was less than the other driver's liability limits to which Tracie stipulated that her insurance company—appellee-defendant State Farm Mutual Automobile Insurance Company (State Farm)—was entitled to a setoff or credit. We also decline to set aside the damage award because it was within the bounds of the evidence that was presented at trial.

Thus, we affirm in part and reverse in part.

### FACTS

On March 1, 2003, Jack and Tracie Burton (collectively, the Burtons) were on the way to the veterinarian's office to have their cats groomed. Jack was driving the car and Tracie was riding in the front seat.

When they approached the intersection of M and 14th streets in Bedford, Jack stopped his vehicle at the four-way posted stop sign. While stopped, the Burtons observed another vehicle driven by Donna Bridwell approach the intersection on Trade's side of the vehicle, about one-half block away. Jack realized that Bridwell was going to crash into him "right at impact." Tr. p. 32. Jack testified that "we were going north, I pulled out, I still knew the car was coming, but Tracie said, 'she's not going to stop' and I looked, and right there it is, boom! Just right there it was. I mean immediately." *Id.* at 32–33. Tracie observed that just before impact, the other driver was not going to stop and there was nothing that Jack could have done to avoid the accident.

Bridwell, who was driving a small car, stated that she stopped at the sign as she headed west on 14th Street. Although Bridwell "T-boned" the Burtons' vehicle, she was positive that the car was not at the intersection and that it was her turn to proceed through the intersection. *Id.* at 228. Bridwell also stated that the Burton's vehicle was more than halfway through the intersection when the collision occurred. Bridwell testified in her deposition that after stopping at the sign, she may have driven "six inches or a foot" when the collision occurred. *Id.* at 357.

As a result of the collision, the passenger side door of the Burton's vehicle could not be opened. And when Tracie exited the vehicle, she felt a sharp pain from her back to hip down her right leg down to her toes. After the Burtons dropped off the cats at the groomer's, they proceeded to the hospital emergency room. Tracie was given Loratab, which seemed to help the pain.

The following Monday, Tracie contacted her family physician because her pain had increased. Although Tracie was referred to a pain management specialist, that physician could not see her for two weeks. In the interim, Trade's pain persisted. Tracie could not move around easily and she routinely slept on the floor. Trade's pain level was high and she suffered even when crossing her road to get the newspaper.

At some point, Tracie went to a chiropractor who performed acupuncture on several occasions. Although initial treatments helped the pain, the chiropractor eventually told Tracie that he was unable to help her any longer.

Tracie also was treated by two pain management doctors and received injec-

tions from both. One surgeon informed Tracie that he could perform a disc fusion but there was a 50% chance that she would be paralyzed.

Another physician recommended that Tracie undergo physical therapy, and Tracie completed six sessions. While the ultrasounds and ice massages helped reduce Trade's pain, ten minutes on a treadmill at a low pace caused Tracie intense pain. However, at the final session, Tracie reported to her physical therapist that she had "0" pain. Tr. p. 456, 466. Moreover, the therapist determined that Tracie was very compliant in the therapy sessions.

On August 25, 2004, Tracie filed a complaint against Bridwell for damages as a result of the accident. Tracie later amended the complaint and added a claim for underinsured motorist coverage against State Farm.

When the Burtons were vacationing in Florida in the summer of 2004, they learned about Microspine, a Florida group that practices microsurgery. Tracie first reported to Microspine in September 2004 and underwent eight surgical procedures there. The diagnosis revealed that Tracie suffered from a pinched nerve as a result of disc protrusion. Moreover, it was determined that the inside of one of Trade's discs was degenerative. Following the last surgery at Microspine in March 2006, Tracie was informed that she might pursue a "fusion type surgery" or "artificial disc" surgery. Tr. p. 104, 158–59.

Only one week after the final surgery on June 28, 2005, Tracie was involved in another motor vehicle accident. Tracie was sitting in a parked car that was hit by another vehicle. Tracie did not seek any treatment after that incident.

Tracie claimed total medical expenses in the amount of $115,932.94, and the parties stipulated that her medical bills through August 28, 2003—the time she was released from therapy—totaled $8,825.28. State Farm paid $100,000 of Trade's medical expenses under the Burtons' automobile policy.

On April 4, 2007, the case was dismissed as to Bridwell and the parties filed stipulations on insurance coverage and payments on October 26, 2009. Among other things, the parties stipulated that:

2. State Farm paid $100,000 in medical payments benefits to or on behalf of Tracie Burton.

3. Donna Bridwell's insurance carrier, American Standard Insurance Company, paid its liability limit of $100,000 to or on behalf of Tracie Burton.

4. State Farm will be entitled to a credit in the sum of $200,000—reflecting Donna Bridwell's liability limits and the medical payments benefits paid—against any verdict entered in this matter.

Appellant's App. p. 83.

In October 2009, Tracie tendered a set of proposed jury instructions to the court. Among them was Indiana Pattern Jury Instruction 6.01, entitled "Fault at Issue," which advised the jury that it "must decide this case according to the Indiana law of comparative fault." Appellant's App. p. 67.

At the conclusion of a jury trial on February 3, 2010, it was determined that Tracie and Bridwell were each fifty percent at fault for the accident. There was no attempt to assert a non-party defense in an attempt to apportion fault to Trade's husband. As a result, the jury awarded damages to Tracie in the amount of $65,814.30, less fifty percent or $32,907.15. In light of the parties' stipulations, the trial court determined that

[the] jury's verdict is less than the amount of the applicable setoffs to which the parties agreed State Farm was enti-

tled. Based upon the findings of the jury, and the stipulations previously entered into by the parties, judgment is hereby entered in favor of ... Tracie Burton, but reduced to the amount of zero dollars.

*Id.* at 14.

On March 3, 2010, Tracie filed a motion to correct error, alleging that there was no basis in the evidence under which fault could properly be apportioned to her because she was a passenger in her husband's vehicle when the accident occurred. Tracie also alleged that the damages were inadequate because "the jury failed to award damages for all the medical treatment which the plaintiff and her subsequent doctors deemed to be necessary for her injuries." *Id.* at 163. As a result, Tracie requested the trial court to reallocate 100% of the fault to Bridwell and grant a new trial on the issue of damages. The trial court subsequently denied the motion to correct error, and Tracie now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

We initially observe that we review a trial court's ruling on a motion to correct error for an abuse of discretion. *Newland Resources, LLC v. Branham Corp.*, 918 N.E.2d 763, 772 (Ind.Ct.App. 2009). A new trial is only available as a remedy when the evidence is insufficient as a matter of law to support the jury's verdict. *Russell v. Neumann–Steadman*, 759 N.E.2d 234, 237 (Ind.Ct.App.2001).

### II. Tracie's Claims

#### A. Allocation of Fault

Tracie argues that the jury's apportionment of fifty percent of fault to her is contrary to law. More particularly, Tracie maintains that she was not required to

be "constantly on the alert" as an automobile passenger and there was nothing in the record establishing that she could have done anything to prevent the collision. Appellant's Br. p. 7.

Before proceeding to the merits of Tracie's claims, State Farm maintains that Tracie waived the issue regarding apportionment of fault because she invited the error and failed to object to the verdict form that included a space for allocating fault to her. In *Henri v. Curto*, 908 N.E.2d 196, 208 (Ind.2009), our Supreme Court discussed when a challenge to the sufficiency of the evidence may be raised on appeal:

> [T]o harmonize Rule 59(A) with Rules 50(A)(4) and 59(J), both of which contemplate a claim of insufficient evidence being presented in a motion to correct error, we hold that such a claim is "appropriately preserved during trial" if it is properly asserted in a motion for judgment on the evidence filed either before the case is submitted to the jury, after submission and before judgment is entered on the verdict, or in a motion to correct error. We intend the phrase "during trial" to require that a claim of insufficient evidence must be preserved by proper presentation to the trial court. Such a challenge may not be initially raised on appeal in civil cases if not previously preserved in the trial court by either a motion for judgment on the evidence filed before judgment or in a motion to correct error.

In this case, Tracie filed a motion to correct error on March 3, 2010, asserting that the allocation of fault was not supported by the evidence. Appellant's App. p. 158–66. In our view, Tracie's mere agreement to the use of the pattern verdict form does not result in the waiver of her right to challenge the allocation of

fault on the basis of insufficient evidence. Therefore, we reject State Farm's claim that Tracie has waived the issue regarding the allocation of fault.

Proceeding to the merits of Tracie's arguments, we note that in *Dennerline v. Atterholt*, 886 N.E.2d 582, 598 (Ind. Ct.App.2008), we observed that

> The apportionment of fault is uniquely a question of fact to be decided by the factfinder. *St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis*, 783 N.E.2d 274, 285 (Ind.Ct.App.2002). "[A]t some point the apportionment of fault may become a question of law for the court. But that point is reached only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion." *Robbins v. McCarthy*, 581 N.E.2d 929, 934 (Ind.Ct.App.1991), *trans. denied* (1992). In evaluating a jury's allocation of fault, we may not reweigh the evidence, for "such is not the function of a court of review." *Imel v. Thomas*, 585 N.E.2d 712, 713 (Ind.Ct. App.1992).

Also, in *Spratt v. Alsup*, 468 N.E.2d 1059, 1063–64 (Ind.Ct.App.1984), the duties of an automobile passenger were discussed as follows:

> An occupant of a vehicle is generally not required to be constantly on the lookout for unexpected danger. 3A I.L.E.Automobiles and Motor Vehicles Section 262, p. 269. However, she has some duty to maintain a proper lookout, *Kavanagh v. Butorac* (1966), 140 Ind.App. 139, 221 N.E.2d 824, which is to say, a passenger remains under a duty to exercise reasonable care. An occupant may properly assume that the driver will exercise proper care and caution. Generally she need not keep a lookout for approaching vehicles and must only act as a reasonable person would in the same or similar circumstances. *Lindley v. Sink* (1940),

218 Ind. 1, 30 N.E.2d 456; *Horton v. Sater* (1966), 140 Ind.App. 1, 221 N.E.2d 452, 456. Nevertheless, if a passenger using reasonable care should have seen an approaching vehicle enabling her to warn the driver who could have prevented the collision, it would have been her duty to do so. *Kavanagh v. Butorac, supra*; *Mattes v. Brugner* (1927), 88 Ind.App. 36, 159 N.E. 156.

Finally, we note that

> a motorist is not required to be constantly prepared for every conceivable circumstance, and to insure against every accident, particularly where the dangerous condition was created by the negligence of another. That another person might have acted in a manner which hindsight later proves to be the more judicious does not establish negligence on the part of the motorist.

*Brock v. Walton*, 456 N.E.2d 1087, 1093 (Ind.Ct.App.1983).

As discussed above, the evidence at trial established that Tracie was a passenger in a vehicle being driven by her husband on March 1, 2003. The Burtons were taking their cats to the groomer and proceeded to the intersection of 14th and M Street, which was a four-way stop. The Burtons reached the intersection before Bridwell's vehicle, and they noticed her vehicle approximately one-half block away. When the Burtons' vehicle was more than halfway through the intersection, Bridwell failed to stop at the stop sign and struck the Burtons' car. Just before the impact, Tracie told her husband that the other car was not going to stop. *Id.* at 33.

In short, the evidence failed to demonstrate that Tracie, as a passenger in the vehicle, had the opportunity to see Bridwell's vehicle, appreciate that it was not going to stop, and warn her husband in time for him to act and avoid the collision.

Absent such evidence, the apportionment of fault cannot stand.

As we observed in *McKinney v. Public Service Co. of Indiana, Inc.*, 597 N.E.2d 1001, 1008 (Ind.Ct.App.1992), "at some point the apportionment of fault may become a question of law for the court. But that point is reached only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion." In our view, this is such a case. In short, the evidence presented at trial completely failed to establish any proper basis for finding that Burton was negligent. "If there is no negligence, there is no fault, and apportionment is not possible." *Crist v. K–Mart Corp.*, 653 N.E.2d 140, 146 (Ind.Ct.App.1995). In light of these circumstances, we conclude that it was error to apportion any fault to Tracie.

We note, however, that even though fault was erroneously attributed to Tracie, the result in this case remains the same. Indeed, on October 26, 2009, Tracie stipulated that Bridwell's liability insurer had paid her $100,000 liability coverage limits. Appellant's App. p. 83. Tracie also agreed that State Farm paid $100,000 in medical payment coverage benefits under the Burtons' own policy. *Id.* And, as discussed above, the stipulation further provided that State Farm was entitled to a credit in the sum of $200,000—reflecting Bridwell's liability limits and the medical payment benefits paid—against any verdict entered in this case. Even had Tracie received the gross amount of damages awarded by the jury at 100% fault, she would have been awarded $65,814.30. *Id.* at 14. This amount is less than the setoff for Bridwell's liability limits and the trial court still would have applied the setoff and reduced the verdict to $0.00.

### B. Damages

■ Tracie next challenges the adequacy of the damages that were awarded to her. Specifically, Tracie maintains that she is entitled to a new trial on damages because the jury failed to award her the medical expenses that she incurred as a result of Micro spine's surgeries and treatments.

Juries are afforded "great latitude" with regard to the damage award determinations they make. *Russell*, 759 N.E.2d at 237 (Ind.Ct.App.2001). Unless it is apparent from a review of the evidence that the amount of damages awarded by the jury was motivated by prejudice, passion, partiality, corruption or that it considered an improper element, the verdict must be upheld. *Id.* The jury's damage award will not be deemed the result of improper consideration if the size of the award can be explained on any reasonable ground. *Dee v. Becker*, 636 N.E.2d 176, 178 (Ind.Ct.App.1994).

Also, when reviewing a damage award, we consider only the evidence that supports the award along with the reasonable inferences therefrom. *Cox v. Matthews*, 901 N.E.2d 14 (Ind.Ct.App.2009). A damage award will be upheld if it falls within the bounds of the evidence. *Id.* In other words, if the award is within the scope of the evidence and can be explained on any reasonable ground, the award will not be deemed the result of improper considerations. *Id.*

In this case, Dr. Souheil Haddad testified that as of July 2003, Burton did not require surgery and opined that "back operations are not good for back pain." Tr. p. 374, 385. Approximately one month later, Burton stopped attending—or believed that she completed—physical therapy. She reported no additional pain and no limitations on her daily living and activities. *Id.* at 385, 464–65. Also, nearly eight months had passed in which Burton sought no treatment for her back and she had no pain medication prescriptions filled.

*Id.* at 474–75. In light of these circumstances, it was reasonable for the jury to conclude that Burton was pain-free and required no prescription-strength pain medications for that eight-month period, despite her disputed, sworn testimony that she took such medications every single day between the accident with Bridwell and the subsequent accident in 2005.

Dr. Shay, another surgeon with whom Tracie consulted in 2004, also did not believe that surgery was necessary. *Id.* at 421–22. Dr. Shay testified that Burton's disc herniation had disappeared and there was nothing in Burton's spine that could plausibly explain her symptoms. *Id.* at 420–21.

During closing argument, State Farm conceded that the initial treatment was appropriate, and that the jury should award the medical bills up through and including the end of physical therapy, which totaled $8,825.28. State Farm also acknowledged that damages for pain and suffering for that time frame was also appropriate. State Farm's counsel argued that

> Now, obviously, we think that would be a reasonable evaluation what this case is about, $8,852.28 in medical bills. Dr. Shay told you, he sees her in June of "04" that L5–S1 disc, that looked like it had been aggravated, had resorbed, he told you. It's not there anymore; it's not putting pressure on her spine anymore in June of "04." So yes, we think that's the reasonable number and you can add to that, pain and suffering for that period of time. These, these period of five months, five, six months that she treated. That would be reasonable. $8,852.28 plus what you deem reasonable to be pain and suffering. That would be a reasonable judgment based upon the

> evidence in front of you in this particular case.

*Id.* at 510–11.

After the trial court instructed the jury that its role was to weigh the evidence and consider and weigh the testimony of expert witnesses, the jury awarded damages to Tracie in the gross amount of $65,814.30. Appellee's App. p. 41. The jury then broke down this amount into $8,852.28 in "medical expenses to 8/28/03" and $56,962.02 for "pain + suffering for 6 months 3/1/03–8/28/03." Appellee's App. p. 41.

In light of the above, it is apparent that the jury believed the testimony of Dr. Shay, Dr. Haddad, and physical therapist Newell, as opposed to that of the Microspine physicians. Thus, there was a basis in the evidence for the damage amount that the jury awarded, and we decline to set the award aside.

 Notwithstanding the evidence supporting the damage award, Tracie contends in a related issue that State Farm's assertions are inconsistent with our Supreme Court's recent opinion in *Sibbing v. Cave*, 922 N.E.2d 594 (Ind.2010). According to Tracie, *Sibbing* necessarily precludes State Farm's argument regarding the amount of damages that she can recover because it was foreclosed from asserting that the Microspine treatment was unnecessary.

In *Sibbing*, the defendant hired an expert witness to review the plaintiff's treatment records and opine whether the treatment she underwent following the accident had been appropriate. *Sibbing* expressly held that a defendant may challenge the reasonableness of a plaintiff's choice of medical providers. More specifically, the *Sibbing* court explained that

> So long as the individual seeking medical care makes a reasonable choice of

physicians, he is entitled to recover for all damages resulting from any aggravation of his original injury caused by a physician's misdiagnosis or mistreatment. 922 N.E.2d at 602. Moreover, it was explained that nothing in the opinion was to be construed as eliminating the defense's right to contest causation:

> We do not read *Whitaker* [*v. Kruse*, 495 N.E.2d 223 (Ind.Ct.App.1986)] to allow an injured plaintiff to recover for medical treatment wholly unrelated to a defendant's wrongful conduct. *Whitaker* does not eliminate the causation element. It specifically states: "We hold that an injured party may recover for injuries caused by the original tort-feasor's negligent conduct."

*Id.* at 603.

Unlike the circumstances in *Sibbing*, there is no showing that there was any "second-guessing" in this case as to what Tracie's medical doctors deemed appropriate. Indeed, State Farm did not hire a physician to review the Microspine records and reevaluate the decisions of those physicians. Rather, State Farm called two surgeons who had treated Tracie before she became familiar with Microspine.

As noted above, both Dr. Haddad and Dr. Shay told Tracie that she was not a candidate for surgery. Dr. Shay told Tracie that there was nothing in her spine that could be causing her symptoms. And despite these two opinions, Tracie nonetheless decided to permit Microspine doctors to perform eight surgeries. Tr. p. 72, 260, 328–29. In our view, such a decision bears directly on the reasonableness of Tracie's decision to treat with Microspine and whether she exercised reasonable care in choosing her physician. *Sibbing*, 922 N.E.2d at 602.

Finally, we note that State Farm was not challenging the necessity of the medical treatment. Rather, it was contesting medical causation. Dr. Shay testified that he believed that the accident caused the right-sided disc bulge, but not the left-sided degenerative changes. Tr. p. 418. However, he also testified that the right-sided bulge had disappeared by the time he saw Tracie in April 2004, and he could not determine what was causing the ongoing pain complaints. *Id.* at 417, 420–21. Moreover, Dr. Shay did determine that the pain was not caused by anything in her spine. As a result, such a causation argument was expressly permitted by the decision in *Sibbing*. In light of these circumstances, we reject Tracie's claims that State Farm was precluded from asserting that the treatment that she underwent at Microspine was unnecessary.

## CONCLUSION

In light of our discussion above, we conclude that it was error to apportion fault to Tracie in these circumstances. However, even after attributing 100% fault to Bridwell, the result does not change in light of the stipulation that entitled State Farm to a $200,000 credit or setoff against the verdict that was entered in Tracie's favor. Thus, the apportionment of fault to Tracie amounted to harmless error. Finally, we conclude that the damage award was within the scope of the evidence.

The judgment of the trial court is reversed in part and affirmed in part.

NAJAM, J., and MATHIAS, J., concur.