**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ROBERT W. MYSLIWIEC**
South Bend, Indiana

ATTORNEYS FOR APPELLEES:

**J. THOMAS VETNE**
**BRIAN M. KUBICKI**
Jones Obenchain, LLP
South Bend, Indiana

FILED

Aug 17 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN C. LANE, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 43A03-1111-CT-534 |
| | ) | |
| BRANDY D. ROSENQUIST and | ) | |
| HERMANN VENTURES, LLC d/b/a | ) | |
| SEASONS HOMECARE, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE KOSCIUSKO CIRCUIT COURT
The Honorable Rex L. Reed, Judge
Cause No. 43C01-1001-CT-4

August 17, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Steven C. Lane collided with a minivan and suffered neck pain as a result of the accident. He sued the minivan's driver and her employer. Lane incurred approximately $39,000 in medical expenses before trial. The jury awarded Lane $32,000 in damages but found that he was twenty percent at fault and thus reduced his recovery to $25,600. Lane filed a motion to correct error, claiming that the trial court erred in instructing the jury on comparative fault, that the jury erred in apportioning fault, and that the jury's verdict was inadequate. The trial court denied Lane's motion.

On appeal, Lane contends that the trial court abused its discretion in denying his motion to correct error and in excluding evidence regarding health insurance. We find no abuse of discretion and therefore affirm.

**Facts and Procedural History**

On the morning of January 12, 2009, Lane was driving his car eastbound on Winona Avenue in a residential neighborhood in Warsaw. He approached the intersection of Union Street at the posted speed limit of thirty miles per hour. Winona Avenue is the preferential street, and a stop sign is posted for northbound traffic on Union Street. When Lane reached the intersection, he suddenly saw a northbound minivan "right in front of [him]" and "didn't have a chance to swerve or hit [his brakes] or anything." Tr. at 43. Lane's car collided with the minivan, which was driven by Brandy D. Rosenquist in the course of her employment with Hermann Ventures, LLC d/b/a Seasons Homecare (collectively, "Appellees"). According to eyewitness Steve Johnson, Rosenquist was traveling approximately thirty-five

2

to forty miles per hour at the time of the collision and "didn't appear to slow down" for the stop sign. *Id*. at 103. At trial, Rosenquist said, "I recall slowing for the stop sign. I recall removing my foot from the gas and I do remember applying the brake. After that, I don't remember anything until I see a tree coming at me." *Id*. at 125.

Lane was transported to the hospital emergency room complaining of pain in his left knee. The evidence is conflicting as to whether he complained of neck pain to emergency room personnel. *See id*. at 79 (Lane's testimony) ("I told [the doctor] that my hand was hurting, that my neck and back were hurting."); Defendants' Ex. A (emergency department note) ("[Lane] denies any neck or back problems at this point but has a history of chronic back pain."). Lane was prescribed pain medication and a muscle relaxer and was released from the hospital. Two days later, he visited a chiropractor to be treated for neck pain. Lane received additional treatment, including several epidural steroid injections, for his neck pain.

Lane sued Appellees for negligence. Prior to trial, the court granted Appellees' motion in limine to exclude "[a]ny reference to the parties' financial status." Appellant's App. at 24. The trial court indicated that its ruling would apply to evidence that Lane once had health insurance (which Lane would have used to establish that he had not been treated for neck pain before the accident) and that he no longer had health insurance (which he would have used to establish pain and suffering as a result of being unable to pay his medical bills after the accident). The court did allow Lane to make an offer of proof as to this excluded evidence on rebuttal. During trial, Lane submitted an exhibit indicating that he had

3

incurred $39,086.98 in medical expenses before trial. The court admitted the exhibit without objection.

On September 21, 2011, the jury awarded Lane $32,000 in damages but found that he was twenty percent at fault for the accident and thus reduced his recovery to $25,600. The trial court entered judgment on the jury's verdict. Lane filed a motion to correct error, asserting that the trial court erred in instructing the jury on comparative fault, that the jury erred in apportioning fault, and that the verdict was inadequate. The trial court denied Lane's motion.

Lane now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Lane challenges the trial court's denial of his motion to correct error as well as its exclusion of evidence regarding health insurance. We review both issues under an abuse of discretion standard. *See Ellis v. M & I Bank*, 960 N.E.2d 187, 190 (Ind. Ct. App. 2011) ("We will reverse a trial court's decision to grant or deny a motion to correct error only for an abuse of discretion. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or if the trial court has misinterpreted the law.") (citation omitted); *Weinberger v. Boyer*, 956 N.E.2d 1095, 1104 (Ind. Ct. App. 2011) ("The standard of review for admissibility of evidence is abuse of discretion. The trial court abuses its discretion only when its action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. Even when the trial court erred in its ruling on the admissibility of evidence, this court will reverse only if

4

the error is inconsistent with substantial justice.") (citations and footnote omitted), *trans.*

*denied* (2012).[1]

### *I. Denial of Motion to Correct Error*

### *A. Comparative Fault*

We have explained that

> [t]he Comparative Fault Act modifies the common law rule of contributory negligence which precluded a victim from recovering damages if the victim was even slightly negligent. The Act permits a jury to allocate fault among parties. Where the Comparative Fault Act applies, it operates to diminish a claimant's recovery by the amount of the claimant's contributory fault, and bars recovery altogether in situations where the claimant's contributory fault is found to be greater than the fault of all other persons whose fault proximately contributed to the claimant's damages.

*Horine v. Homes by Dave Thompson, LLC*, 834 N.E.2d 680, 685 (Ind. Ct. App. 2005)

(citations and quotation marks omitted).

In their answer to Lane's negligence complaint, Appellees denied that Rosenquist

caused the accident. Before trial, the court and the parties reviewed the preliminary jury

---

[1] Appellees' counsel use footnotes, rather than citation sentences, to cite sources. As we recently explained in *City of Elkhart v. SFS, LLC*, 968 N.E.2d 812 (Ind. Ct. App. 2012),

> Citation sentences are required under our appellate rules. Ind. Appellate Rule 22 (requiring adherence to Bluebook rules); *see* The Bluebook: A Uniform System of Citation R. B2, at 4 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010) ("In non-academic legal documents, citations appear within the text of the document as full sentences or as clauses within sentences directly after the propositions they support.").

*Id*. at 815 n.1. We also note that Appellees' counsel cite an unpublished memorandum decision on page 18 of their brief in violation of another appellate rule. *See* Ind. Appellate Rule 65(D) ("Unless later designated for publication, a not-for-publication memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish res judicata, collateral estoppel, or law of the case."). We encourage Appellees' counsel to comply with the foregoing rules in future appeals.

instructions, which apparently mentioned comparative fault.[2] Lane objected on the basis that Appellees had not specifically pled contributory fault as an affirmative defense. The trial court overruled the objection on the basis that the Appellees had raised the defense "by a general denial." Tr. at 11.

On appeal, Lane argues that the court erred in instructing the jury on comparative fault because Appellees failed to specifically plead contributory fault as an affirmative defense. Lane cites no authority for this proposition, and we are aware of none. In fact, as Appellees observe, Indiana Trial Rule 9.1(A) says, "In all claims alleging negligence, the burden of pleading and proving contributory negligence, assumption of risk, or incurred risk shall be upon the defendant who may plead such by denial of the allegation." Lane does not respond to this observation in his reply brief, let alone contend that "contributory negligence" does not encompass "contributory fault."

In an opinion issued the year before our legislature adopted the Comparative Fault Act, our supreme court held that the trial court "did not exceed its discretion in allowing defendants to raise contributory negligence and incurred risk as issues at trial." *Whisman v. Fawcett*, 470 N.E.2d 73, 77 (Ind. 1984). In so holding, the *Whisman* court relied in part on the following statement regarding Trial Rule 9.1(A) from Dean William F. Harvey's treatise on civil procedure:

> It is interesting to note that the [1970 Civil Code Study] Commission did not adopt as part of the new code the provisions of Federal Rule 8(c) which requires contributory negligence, assumption of risk and incurred risk to be separately and specifically pleaded as affirmative defenses. Under [Trial Rule

---

[2] Those instructions are not in the record before us.

9.1(A)], *by denying the allegation of negligence* the defendant has available to him any of the three defenses on which he relies. *The reason for so drafting the new rule, which is in reality a true codification of the old law, is that since all three defenses are really matters of proof tending to negate defendant's responsibility for damages, such matters of proof can fairly be said to be in issue when negligence is pleaded by the plaintiff. In effect, the plaintiff can be expected to know that the defendant will try to prove that plaintiff's injury was the result of plaintiff's own conduct.*

*Id.* (citing 1 WILLIAM F. HARVEY INDIANA PRACTICE RULES OF PROCEDURE ANNOTATED 563 (1st ed. 1969) (emphases in *Whisman*)). We see no reason why a different result would obtain under the Comparative Fault Act. Instructing the jury is a matter of trial court discretion, *Merida v. Cardinal*, 749 N.E.2d 605, 607 (Ind. Ct. App. 2001), and Lane has failed to establish an abuse of that discretion here.[3]

### B. Fault Apportionment

Lane also contends that the jury erred in apportioning any fault to him. Fault apportionment is uniquely a question of fact to be decided by the jury. *Hampton v. Moistner*, 654 N.E.2d 1191, 1195 (Ind. Ct. App. 1995). We may not reweigh the evidence, for "such is not the function of a court of review." *Imel v. Thomas*, 585 N.E.2d 712, 713 (Ind. Ct. App. 1992). "While at some point the apportionment of fault may become a question of law for

---

[3] Lane also argues that the trial court erred in instructing the jury that Appellees "'[did] not have any burden to prove or even to present any evidence that someone else was at fault.'" Appellant's Br. at 18 (quoting Final Instruction 15). Lane failed to object to this instruction at trial and therefore has waived this argument. *Jamrosz v. Res. Benefits, Inc.*, 839 N.E.2d 746, 761 (Ind. Ct. App. 2005), *trans. denied* (2006). Waiver notwithstanding, Lane has failed to show that he was prejudiced by the instruction, and thus he would not be entitled to reversal in any event. *See Penn Harris Madison Sch. Corp. v. Howard*, 861 N.E.2d 1190, 1195 (Ind. 2007) ("Even when a jury is given an incorrect instruction on the law, we will not reverse the judgment unless the party seeking a new trial shows a reasonable probability that substantial rights of the complaining party have been adversely affected.") (citation and quotation marks omitted).

7

the court, that point is reached only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion." *Hampton*, 654 N.E.2d at 1195.

Lane makes the following argument:

> The evidence at trial concerning liability was straight-forward. [Lane] testified that he was traveling at the posted speed limit of 30 mph on a preferential street, when [Rosenquist], traveling 5 or 10 mph over the speed limit,[4] failed to stop at a stop sign and suddenly appeared in front of [Lane], who was unable to avoid the collision. [Lane], and an independent witness, each testified that [Rosenquist's] vehicle was not visible to [Lane] until he was virtually in the intersection, and therefore insufficient time existed to take evasive steps to avoid the collision.
>
> [Lane] was not required to take preventative steps, such as slowing his vehicle, as he crossed every cross-street.

Appellant's Br. at 19.

We note, however, that the jury was instructed that a motorist must indeed slow his vehicle as he approaches each intersection. That instruction reads as follows:

When the events in this case happened, Indiana Code § 9-21-5-4(1) provided, in part, as follows:

> The driver of each vehicle shall … drive at an appropriate reduced speed as follows:

---

[4] Appellees observe that no evidence was presented regarding the speed limit on Union Street and thus no basis exists for Lane's assertion that Rosenquist was traveling over the speed limit.

8

(1) when approaching and crossing an intersection or railway grade crossing.[5]

If you decide from the greater weight of the evidence that a person violated Indiana Code § 9-21-8-24[6] and that the violation was not excused, then you must find that person was at fault.

---

[5] Indiana Code Section 9-21-5-4 reads in its entirety as follows:

The driver of each vehicle shall, consistent with section 1 of this chapter, drive at an appropriate reduced speed as follows:

(1) When approaching and crossing an intersection or railway grade crossing.

(2) When approaching and going around a curve.

(3) When approaching a hill crest.

(4) When traveling upon a narrow or winding roadway.

(5) When special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.

Indiana Code Section 9-21-5-1 reads,

A person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing. Speed shall be restricted as necessary to avoid colliding with a person, vehicle, or other conveyance on, near, or entering a highway in compliance with legal requirements and with the duty of all persons to use due care.

[6] This statute reads,

A person may not:

(1) slow down or stop a vehicle;

(2) turn a vehicle from a direct course upon a highway; or

(3) change from one (1) traffic lane to another;

unless the movement can be made with reasonable safety. Before making a movement described in this section, a person shall give a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement and give an appropriate stop or turn signal in the manner provided in sections 27 through 28 of this chapter if any other vehicle may be affected by the movement.

Ind. Code § 9-21-8-24. We cannot tell whether this statute was included in the instruction intentionally or as a result of a typographical error.

Appellant's App. at 44 (Final Instruction 14).

Lane contends that "[t]he instruction is erroneous because it refers to two different sections of the Indiana Code. Further, there was no evidence to support the giving of the instruction." Appellant's Br. at 21. He asserts that "[a]ll discussion[s] of instructions were held in the judge's chambers" and that he "objected to the instruction." Appellant's Br. at 23. Appellees say that "neither the record, nor [Rosenquist's] own recollection, support[s] the claim" that Lane objected to the instruction. Appellees' Br. at 31. If Lane made any objection in chambers, he made no effort to put it on the record at trial, nor did he prepare a verified statement of the evidence regarding any objection pursuant to Indiana Appellate Rule 31.[7] Absent any competent evidence that Lane objected to the instruction at trial, we must conclude that he has waived any argument about it on appeal. *Jamrosz v. Res. Benefits, Inc.*, 839 N.E.2d 746, 761 (Ind. Ct. App. 2005), *trans. denied* (2006).

As for Lane's assertion that Rosenquist ran the stop sign, Rosenquist told the jury that she had known that there was a stop sign for northbound traffic on Union Street and that there was no stop sign for eastbound traffic on Winona Avenue. She said that she remembered "slowing for the stop sign," "removing [her] foot from the gas," and "applying the brake." Tr. at 125. It was the jury's function to judge the credibility of the witnesses and weigh the conflicting evidence regarding whether Rosenquist stopped at the stop sign before

---

[7] *See* Ind. Appellate Rule 31(A) ("If no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection. The party shall then file a motion to certify the statement of evidence with the trial court or Administrative Agency. The statement of evidence shall be attached to the motion.").

entering the intersection. *See St. Margaret Mercy Healthcare Ctrs., Inc. v. Poland*, 828 N.E.2d 396, 404 (Ind. Ct. App. 2005) ("[I]t was within the province of the jury to judge the credibility of witnesses and to weigh the evidence."), *trans. denied*.

Finally, we note that the jury was instructed that "[e]very driver must maintain a proper lookout to see or hear what should be seen or heard through the exercise of reasonable care. A person is negligent if he or she does not maintain a proper lookout." Appellant's App. at 43 (Final Instruction 13). Lane concedes that both sides presented evidence "that there were obstructions at the intersection which prevented the drivers from seeing one another until they were virtually in the intersection itself." Appellant's Reply Br. at 2.[8] Based on the evidence presented and the instructions given to the jury, we conclude that the jury reasonably could have found Lane to be twenty percent at fault for the accident. As such, Lane is not entitled to reversal on this issue.

### C. Inadequate Verdict

Next, Lane asserts that the jury's verdict was inadequate. We employ a strict standard when reviewing a claim of inadequate damages, and we will neither reweigh evidence nor

---

[8] Lane suggests that he did not have a duty to keep a proper lookout and slow down as he approached the intersection because "[t]he exercise of ordinary and reasonable care does not require the preferred driver to be constantly aware of actions of non-preferred drivers in plain view." Appellant's Reply Br. at 3 (citing *Anderson v. Pre-Fab Transit Co.*, 409 N.E.2d 1157, 1164 (Ind. Ct. App. 1980), *trans. denied*). The flaw in Lane's argument is that Rosenquist's minivan was *not* in plain view prior to the accident because of the layout of the intersection and the surrounding topography in that residential area. Lane's own witness, Steve Johnson, testified that a motorist traveling eastbound on Winona Avenue would have to be "right on it pretty close to" the intersection to see any northbound traffic on Union Street because "it's hard to see anybody right there behind the trees and house." Tr. at 105.

11

judge witness credibility. *Palmer v. Comprehensive Neurologic Servs., P.C.*, 864 N.E.2d 1093, 1103 (Ind. Ct. App. 2007), *trans. denied.*

> We consider only the evidence favorable to the award. In addition, we must not reverse a damage award so long as the damages fall within the scope of the evidence. A verdict will be reversed only upon a finding that, based upon the evidence, the amount of damages awarded indicates that the jury was motivated by prejudice, passion, partiality, corruption, or consideration of some improper element. Where the evidence presented is conflicting as to the nature, extent, and source of the injury, the jury is in the best position to assess damages, and we will not disturb the award.

*Id*. (citations omitted). "The jury's damage award will not be deemed the result of improper consideration if the size of the award can be explained on any reasonable ground." *Burton v. Bridwell*, 938 N.E.2d 1, 7 (Ind. Ct. App. 2010), *trans. denied* (2011).

Lane complains that "[t]he jury verdict, even before a 20% reduction for [his] fault, was approximately $8,000 less than the undisputed medical expenses." Appellant's Br. at 12. Our supreme court has said that "[i]n order to recover an award of damages for medical expenses, the party seeking to recover these damages must prove that the expenses were both reasonable and necessary." *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 277 (Ind. 2003). Although Appellees did not object to the admission of Lane's list of medical expenses, they did vigorously dispute whether those expenses were reasonable and necessary. For example, Lane was billed nearly $4200 for three epidural steroid injections that Appellees' medical expert would not have recommended in Lane's case. *See* Deposition of Robert A. Yount, M.D., at 31-32 ("I do not recommend epidural steroid injections for patients in the absence of radicular pain because, otherwise, there is nothing to treat. A cervical epidural injection works because it reduces nerve inflammation. If there's no nerve inflammation, no radicular

12

pain, no pain in the arm, a cervical epidural, in my view is not indicated."). One of Lane's physicians opined that Lane would require several steroid injections annually for the rest of his life, at a total cost of approximately $250,000, and Appellees' expert disagreed with this opinion. *Id.*[9] Appellees also disputed the nature, extent, and source of Lane's neck injury. *See*, *e.g.*, Tr. at 154-55 (Appellees' closing argument) ("And even Mr. Lane's own doctor, Poovendran, says that the MRI was absolutely normal for a 55 year old man. Absolutely normal. Not a sign of trauma on it."); *id.* at 159 ("What about this neck discomfort? Dr. Poovendran says if you've got this degenerative disk disease, you can get pain just by going through the activities of daily living. Lifting something, waking up on the wrong side of the bed, reaching over to tie shoes. [Lane] had it before the accident. He's got it now. His life wasn't ruined because of [Rosenquist].… He still works. He still plays pool.").

Based on the record before us, we conclude that the jury's damage award can be explained on the reasonable ground that the jury simply did not believe that some of Lane's medical expenses were reasonable and necessary and that his neck pain was either not caused by the accident or not as severe as he claimed. As such, we will not disturb the award.[10]

---

[9] In closing argument, Lane's counsel also asked that his client be compensated for a future spinal fusion surgery and postoperative care that one of Lane's physicians had recommended and estimated at $200,000. Appellees' expert disputed both the estimated cost and the necessity of the procedure. *See* Deposition of Robert A. Yount, M.D., at 14 ("It's completely unreasonable. There isn't an insurance company in the state of Indiana that would pay anywhere near that for a three level cervical fusion."), 29-30 ("What is the point of [the surgery]? [Lane's physician] has already said he would continue to have pain afterwards and would require further surgery in the future. What is the point of subjecting him to that, any future surgeries if he's always going to have neck pain? I ask you, what is the point of that?").

[10] Lane's counsel argued that his client was entitled to hundreds of thousands of dollars for pain and suffering, but he makes no specific argument about such damages on appeal.

That being said, we are compelled to address several comments made by Appellees'

counsel during closing argument. It has been said that "[a]rguments and comments by

counsel calculated to arouse the passions and prejudices of a jury, by presenting to them

considerations extraneous to the evidence, are highly improper." 28 IND. LEGAL

ENCYCLOPEDIA, *Trial* § 48 (2007) (citing *U.S. Cement Co. v. Cooper*, 172 Ind. 599, 88 N.E.

69 (1909), and *City of Shelbyville v. Morton*, 138 Ind. App. 460, 208 N.E.2d 705 (1965),

*trans. denied*). After Lane's counsel quantified his client's alleged damages at approximately

$1,000,000, Appellees' counsel made the following remarks:

> Well, now you know why we're here. That's why we're here. That's why
> they've been chasing Brandy and Hermann Ventures for the last two and a half
> years. That's why we're here.… Speaking of Hermann Ventures, why is it in
> the case at all? What did Hermann Ventures do wrong? You heard Brandy
> testify that she went through a pre-employment screening, background checks,
> driving checks, license checks, you name it. Nothing wrong so they hired her.
> But if Brandy is liable, it's liable. Even though she doesn't work there
> anymore. Is it any wonder employers aren't hiring these days.

Tr. at 146-47.

> Let's look at what happens later, what happens after the emergency room to
> make [Lane] think he's horribly injured and that this was a life altering
> accident? Well, the first thing he did, that we found out yesterday, was hire a
> lawyer. Now, I don't know about you but unless somebody dies I'm not
> lawyering up right away. But that's what he did. Maybe we're just that kind
> of society now. He didn't even wait to see a doctor on the follow up visit. He
> went straight to his lawyer. And lawyers don't help you get any better. That's
> what Dr. Yount told us today. He said in fact you're less likely to get better if
> you go to a lawyer, and that makes sense 'cause I'm a lawyer and I can't cure
> anything. [Lane's counsel] had a good visual yesterday. You remember, he
> had this stack of records here, and he said look at the medical records he had
> before the accident, there's just a couple. Then look at the stack of records
> he's had after the accident. Look at that. I submit to you there's a couple of
> ways you can look at that. The way he suggests is one way. I suggest a way to
> look at that is this is the amount of medical records he had before the accident,

14

and this, this big stack, that's the amount of medical records he had after he got a lawyer.

*Id*. at 153-54.

Mr. Lane sat up here yesterday and told us – the question from [his counsel] was, what has Dr. Poovendran recommended? Massage therapy. Have you had it? No. Why not? I can't afford it. Where did the money go? Well, we know that $3,000 of it went for one hour of Dr. Gottlieb's time [for a deposition]. He's investing it in litigation, not in treatment. And do you trust what Dr. Gottlieb is telling you? Why would he say surgery is necessary? Money. He does 300 of those surgeries a year. They take about an hour to do, and he didn't tell us what his charges for that hour are, but he says the surgery could cost $200,000.[11] Now that is ridiculous. You don't need me to tell you that. You don't need Dr. Yount to tell you that – just like you don't need a weather man to know which way the wind blows. Two hundred thousand for an hour's worth of surgery is ridiculous. And think of this, if he does 300 of those a year at $200,000 a pop, you know what that works out to? I do because I added it up before coming up here this morning. That amounts to 60 million dollars. Sixty million. If Gottlieb only gets ten percent of that 60 million, just 10 percent, that's still 6 million dollars that he gets a year from an hour's worth of work for 300 days a year. It's no wonder that Dr. Gottlieb recommends surgery at the drop of a hat. Got a hangnail? Let's operate.… So why operate when physical therapy is working. Money. Is it any wonder our health care system is broken.

*Id*. at 156-58.

If you're in an accident with someone, it's reasonable to expect that they would have to go to the emergency room. I would; so would you. It's fair and reasonable to award the emergency room expenses to Mr. Lane. But after that…. We've got no broken bones. We've got no dislocations. We've got no nerve injuries. We've got no burns. Do you remember that woman who spilled McDonald's coffee in her lap and got awarded tons of money for doing that and she had some really gruesome burns. We don't have that here.

*Id*. at 159-60.

---

[11] In fact, the $200,000 estimate also included preoperative and postoperative care, physical therapy, and follow-up visits. Deposition of Jamie E. Gottlieb, M.D., at 10.

These comments were blatant attempts to exploit the jurors' economic insecurities and reinforce negative stereotypes of the medical and legal professions. Such considerations were both irrelevant and prejudicial, and counsel's comments exceeded the bounds of permissible advocacy. We admonish Appellees' counsel to refrain from making similar comments in future cases and remind them that using scare tactics instead of focusing on the evidence presented at trial can ultimately lead to reversal on appeal. Because the jury's verdict in this case can be explained on a reasonable ground, however, we decline Lane's invitation to overturn it.[12]

## II. Admissibility of Health Insurance Evidence

Finally, Lane contends that the trial court abused its discretion in excluding evidence regarding health insurance. To reiterate, Lane wanted to present evidence that he had not submitted an insurance claim for neck pain treatment prior to the accident as well as evidence that his post-accident lack of health insurance increased his pain and suffering. Two witnesses corroborated Lane's testimony that he had not experienced neck pain before the

---

[12] Lane's counsel did not object to the foregoing comments or request an admonishment or a mistrial. Our supreme court has said, "When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. If the party is not satisfied with the admonishment, then he or she should move for mistrial. Failure to request an admonishment or to move for mistrial results in waiver." *Dumas v. State*, 803 N.E.2d 1113, 1117 (Ind. 2004) (citations omitted). Lane seeks to avoid waiver by invoking the fundamental error doctrine, which has been applied almost exclusively in the criminal context. "The fundamental error doctrine is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), *trans. denied*. In *Johnson v. Wait*, 947 N.E.2d 951 (Ind. Ct. App. 2011), *trans. denied*, another panel of this Court observed that "[w]e have applied the fundamental error doctrine only in limited situations in civil cases," such as those involving involuntary commitment and termination of parental rights. *Id*. at 959. As did the appellants in *Johnson*, who sought reversal in a medical malpractice action on the basis of an erroneous jury instruction, Lane has "failed to show that the fundamental error doctrine should be extended to cases that do not involve liberty interests or parental rights." *Id*.

accident, and thus evidence that Lane had not submitted insurance claims for neck pain treatment would have been cumulative. Any error in the exclusion of merely cumulative evidence is harmless. *Spaulding v. Harris*, 914 N.E.2d 820, 830 (Ind. Ct. App. 2009), *trans. denied* (2010).

As for the evidence regarding Lane's lack of health insurance, the trial court correctly observed that "[t]here is absolutely no control of the Defendant over the financial circumstances of the injured party. It is what it is, and that hasn't anything to do with negligence or the right to recover." Tr. at 5; *see Strack & Van Til, Inc. v. Carter*, 803 N.E.2d 666, 675 (Ind. Ct. App. 2004) ("Generally speaking, the measure of compensatory damages in negligence actions depends upon the nature of the injuries sustained by the plaintiff and not upon her wealth or poverty."). Lane cites no authority to the contrary and therefore has failed to establish that the trial court abused its discretion in excluding such evidence. Consequently, we affirm.

Affirmed.

RILEY, J., and BAILEY, J., concur.